IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SADEEN JONES, | : |
| **Plaintiff** | : |
| | : No.  1:21-CV-1715 |
| v. | : |
| | : Judge Wilson |
| MARK C. GARMAN, CAPTAIN | : |
| VANGORDER, LT. VANCE, LT. | : Electronically Filed Document |
| SHERMAN, LT. STOVER *and* C.O. J. | : |
| NICHOLAS, | : *Complaint Filed 10/07/21* |
| **Defendants** | : |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Sadeen Jones, the *pro se* Plaintiff in this action (hereinafter "Plaintiff"), brings claims pursuant to § 1983 before the Court. He claims that his placement in a dry cell after a visit during his incarceration at the State Correctional Institution at Rockview (hereinafter "SCI-Rockview") violated his constitutional rights, specifically his rights under the First, Eighth, and Fourteenth Amendments.[1]

These claims fail. Plaintiff cannot show that his placement in the dry cell was either without penological justification or retaliatory; he has also failed to

---

[1] Plaintiff's claims are vague. Defendants have endeavored to answer all claims presented by Plaintiff, but this task is difficult given that he has not pled any claims with particularity, nor specified what claims are brought against which Defendants.

show personal involvement of most of the Defendants.  Summary judgment is appropriately granted in favor of Defendants.

## PROCEDURAL HISTORY

This action was initiated with a Complaint filed on October 7, 2021.  (ECF Doc. 1).  Defendants answered on January 17, 2023.  (ECF Doc. 22).  Discovery is closed in this matter.  (ECF Doc. 23).  The Defendants have moved for summary judgment.  (ECF Doc. 45).  This brief follows.

## SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendants filed a separate Statement of Undisputed Material Facts contemporaneous with this Brief. In the interests of brevity, Defendants will not restate the facts here; Defendants will cite to the evidence in this argument.

## QUESTIONS PRESENTED

**I. As Plaintiff has failed to show the personal involvement of various Defendants, should summary judgment be granted in their favor?**

*Suggested Answer:  Yes.*

**II. As Plaintiff has failed to establish a violation of his rights, should summary judgment be granted in favor of Defendants?**

*Suggested Answer:  Yes.*

## ARGUMENT

Standard of Review

"Summary judgment procedure is…an integral part of the Federal Rules as a whole, [and is] designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is appropriate where the moving party shows that "there is no genuine issue as to any material fact and that [he/she] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex* at 322.

To successfully oppose a motion for summary judgment, Plaintiff cannot rely on the unsupported allegations of the Complaint and he must present more than the "mere existence of a scintilla of evidence" in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Plaintiff must offer specific material facts that would be admissible at trial and that contradict Defendants' assertion that no genuine issue is in dispute. *Kline v. First West Government Securities*, 24 F.3d 480, 485 (3d Cir. 1994); Fed. R. Civ. P. 56(e).

Not all facts are material and not all disputes are genuine. A fact is "material" only if its existence or nonexistence would affect the outcome of the case under the applicable substantive law. *Anderson* at 248; *see also Celotex* at 323 ("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"). A dispute is "genuine" only where a reasonable jury "could return a verdict in favor of the

non-moving party." *Anderson* at 255; *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587 (1986) ("[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial").

Instantly, under this standard, the Defendants' Motion for Summary Judgment is appropriately granted because there is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law.

**I.      Plaintiff has failed to show personal involvement on behalf of the Commonwealth Defendants.**

To state a claim for 42 U.S.C. § 1983 liability against a state official, a plaintiff must allege personal involvement in the alleged wrongs by that official. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Every defendant against whom suit is brought must be shown to have been involved in the complained of conduct. *Rizzo v. Goode*, 423 U.S. 362, 363 (1976).

Supervisors cannot be held liable for the misconduct of their subordinates on a theory of *respondeat superior*; a plaintiff must show some personal involvement of the supervisor in the misconduct. *Monell v. Dept. of Soc. Srvcs*, 436 U.S. 658 (1978); *see also Rizzo* at 362. Personal involvement may be shown by actual participation in misconduct, knowledge of and acquiescence in the misconduct, or

4

circumstances in which inaction sends a message of approval of the misconduct. *Chincello v. Fenton*, 805 F.2d 126, 133-34 (3d Cir. 1986).

Acquiescence requires both contemporaneous knowledge of the alleged wrongdoing and direct supervisory authority over the subordinate actor. *Robinson v. Pittsburgh*, 120 F.3d 1286, 1293-94 (3d Cir. 1997). "'[A]ctual knowledge and acquiescence' suffices for supervisory liability because it can be equated with 'personal direction' and 'direct discrimination by the supervisor.'" *Id*. at 1294. Thus, under § 1983, a supervisor can be held liable for the acts of a subordinate only if he knows that the subordinate is violating someone's rights and fails to act to stop the subordinate from doing so. *Id*. Moreover, where actual supervisory authority is lacking, mere inaction does not amount to knowledge and acquiescence sufficient to impose liability under § 1983. *Id*. Thus, even a supervisory official has no affirmative duty under § 1983 to take action against an offending subordinate after the fact. *Chinchello* at 133 (*citing Rizzo* at 377).

Furthermore, a state official cannot be held liable for failure to supervise or investigate employees, "[even] if the risk was obvious and a reasonable person would have noticed it." *Farmer v. Brennan*, 511 U.S. 825, 841-42 (1994); *see also Baker v. McCollan*, 443 U.S. 137, 143-44 (1979) (rejecting failure to investigate claim against state official).

As noted, Plaintiff's claims are unclear. It appears that this case is mostly about his placement in a dry cell for ten days from July 21, 2019 while incarcerated at SCI-Rockview. *See* Defendants' Statement of Undisputed Material Facts in Support of Summary Judgment (hereinafter "SMF") ¶¶ 1, 2. This was due to an investigation into his possession of contraband. SMF ¶¶ 3, 7. Further investigation revealed that Plaintiff did possess contraband in his cell. SMF ¶ 4.

In Plaintiff's deposition, he essentially admitted that he has chosen his defendants essentially under a theory of supervisory liability. *See generally* Transcript of Deposition of Plaintiff Sadeen Jones (hereinafter "Plaintiff Deposition"), attached to SMF as Exhibit B. Plaintiff essentially blamed the Superintendent of the facility, Defendant Garman, for these events based largely on the fact that he is in charge of the facility. Plaintiff Deposition, 25:3-25, 26:1-6. This seems to be the case for all of the Defendants. Plaintiff suggested that Defendant Vangorder could have simply ordered him out of the dry cell as a supervisor. Plaintiff Deposition, 26:7-23. He said the same about Defendant Vance. Plaintiff Deposition, 27:5-24. Plaintiff suggested that Defendant Stover could have stopped another CO from handcuffing him in a way that caused him discomfort, but offered nothing else about his involvement. Plaintiff Deposition, 29:4-18. Plaintiff continues his trends of both involving a seemingly innocent bystander and invoking supervisory liability with Defendant Sherman. Plaintiff

6

Deposition, 29:19-25, 30:1-8.  Defendant Nicholas[2] was merely the corrections officer who helped place him in the dry cell, along with the higher-ranking Defendant Stover.  Plaintiff Deposition, 8:5-16.  Any and all claims that boil down to supervisory liability should have judgment entered in favor of the Defendants.

**II.     Plaintiff has failed to show a violation of his constitutional rights.**

Plaintiff purports to brings claims before the Court pursuant to the First, Eighth, and Fourteenth Amendments.  All these claims fail.

**A. Plaintiff has failed to show a due process violation.**

A due process claim requires the following: (1) that the plaintiff was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) the defendant subjected him to this deprivation; (4) the defendant was acting under color of state law; and (5) the plaintiff suffered injury as a result.  *Sample v. Diecks*, 885 F.2d 1099, 1113 (3d Cir. 1989).  In analyzing a due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the

---

[2] To the extent Plaintiff could be inferred to be bringing a failure to intervene claim, it will be noted *infra* that Plaintiff's placement in the dry cell was not a violation of his rights, so there is essentially nothing in which Defendant Nicholas should have intervened.  Regardless, Plaintiff's initial placement in the dry cell seems eminently reasonable, so if that is the end of the Defendant Nicholas' involvement in this action in Plaintiff's estimation, his involvemen should cease entirely.  Even Plaintiff noted that it is normal for an inmate who is suspected of possessing contraband to be placed in a dry cell.  Plaintiff Deposition, 10:19-23.

Fourteenth Amendment." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir.2000) (*citing Fuentes v. Shevin*, 407 U.S. 67 (1972)).

A false misconduct charge, standing alone, does not violate an inmate's constitutional rights; instead, one must be provided due process of law prior to "[being] deprived of a protected liberty interest." *See Hutchinson v. Kosakowski*, 2015 WL 3737656, at *4 (M.D. Pa. June 15, 2015) (*citing Freeman v. Rideout*, 808 F.2d 949, 951) (2d Cir. 1986). "Thus, so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (internal citation omitted).

It should first be noted that Plaintiff's fixation on the policies of the Department of Corrections[3] does not establish a constitutional violation. "[T]he policies of the Department of Corrections and the Eighth Amendment are not the same[.]" *Delker v. Blaker,* 2012 WL 726415, at *6 (W.D. Pa. Mar. 1, 2012). *See also Davis v. Wigen,* 1995 WL 422790, *2 (E.D. Pa. July 13, 1995) (citing *James*

---

[3] It remains curious, however, that Plaintiff testified that his understanding of the policy was that an inmate can be in a dry cell up to *fifteen* days without an extension, when his time in the dry cell was actually ten days, given that elsewhere in this action, notably the Complaint, the Plaintiff is extremely quick to claim that any violation of his understanding of a policy is a violation of his rights; Plaintiff does not seemingly believe that the opposite is true. Plaintiff Deposition, 31:20-25.

8

*v. Quinlan,* 866 F.2d 627, 631 (3d. Cir. 1989) ("plaintiff cannot rely on an internal Bureau of Prisons procedure to establish a constitutional violation").

Plaintiff has failed to meet the elements of this claim. Firstly, he has failed to establish that he was deprived of a liberty interest, given that, as will be noted *infra*, a change in custody is not a violation in and of itself; to the extent that he claims the misconduct against him is false[4], this does not establish a liberty interest either. Plaintiff was believed to be smuggling contraband into the prison; this warrants his placement in a dry cell and does not establish a due process violation. Plaintiff has also failed to make any showing of an actual injury. Although he attaches two medical reports to the Complaint, neither establishes that anything happened that has anything to do with this incident. Firstly, he attaches a medical document that someone has hand-written "thumb tendonitis" on. Even ignoring the fact that it is impossible to tell who wrote that on this document, it is from November of 2019, several months after this incident and offers no clear causal connection. Secondly, Plaintiff attaches a medical document that indicates that he was given a temporary splint, but this was in January of 2020, even farther removed in time. Medical records from this actual timeframe are attached to Defendants' SMF as Exhibit F, and they do not establish that Plaintiff was suffering any injury. As Plaintiff has not established any injury connected to this

---

[4] This is, of course, despite his guilty plea and lack of appeal. SMF ¶¶ 5, 6.

incident, he cannot proceed with this claim. Summary judgment should be granted in favor of Defendants.

### B. Plaintiff has failed to show an Eighth Amendment violation.

To state an Eighth Amendment conditions of confinement claim, a plaintiff must demonstrate: (1) he is incarcerated under conditions posing a substantial risk of serious harm; and (2) prison officials must have a "sufficiently culpable state of mind," which means deliberate indifference to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

To meet the objective prong, the plaintiff must show that he has been deprived of the "minimal civilized measure of life's necessities." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (*citing Sandin v. Connor*, 515 U.S. 472 (1995); *Young v. Quinlan*, 960 F.2d 351, 361 (3d Cir. 1992); *McCluskey v. Vincent*, 505 Fed. Appx. 199, 204 (3d Cir. 2012) (internal quotations omitted). Only extreme deprivations are sufficient to present a claim for unconstitutional conditions of confinement. *Dockery v. Beard*, 509 Fed. Appx. 107, 112 (3d Cir. 2013) (*quoting Farmer* at 834; *Rhodes v. Chapman*, 452 U.S. 337, 347, (1981); *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)). To the extent that prison conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Farmer* at 834; *Rhodes* at 347; *Booth v. King*, 228 Fed. Appx. 167, 171 (3d Cir. 2007) (*quoting Tillery v. Owens*, 907 F.2d

418, 426-27 (3d Cir. 1990)). While the Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement, the constitution does not mandate comfortable prisons. *Carson v. Mulvihill*, 488 Fed. Appx. 554, 560 (3d Cir. 2012) (*quoting Rhodes* at 349); *Dockery* at 112.

A prison official cannot be found liable under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference". *Farmer* at 837-38; *Hamilton v. Leavy*, 117 F.3d 742, 476 (3d Cir. 1997); *Bistrian v. Levi*, 696 F.3d 352, 367-68 (3d Cir. 2012). This is a subjective standard. Additionally, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer* at 837-38.

It is well-established that there is no constitutional right for an inmate to be celled in a particular place, or under particular circumstances. "[B]y virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted." *McKune v. Lile*, 536 U.S. 24, 39-40 (2002); *Podhorn v. Grondolsky*, 350 Fed. Appx. 618, 620 (3d Cir. 2009) ("[P]risoners have no constitutional right to be assigned to a particular institution, facility or rehabilitative program."). Rather, "the prison has a penological interest

11

in the housing placement of its inmates and '[i]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise.'" *Thomaston v. Meyer*, 519 Fed. Appx. 118, 119 (3d Cir. 2013) (*quoting McKune*, 536 U.S. at 39).

The Third Circuit has recently addressed dry cell placement in the context of a conditions of confinement claim in *Thomas v. Tice*, 948 F.3d 133 (3d. Cir. 2020). In that case, the Court noted that "… even though administrative confinement in a dry cell is unpleasant and often unsanitary, so long as the conditions of that confinement are not foul or inhuman, and are supported by some penological justification, they will not violate the Eighth Amendment." *Thomas* at 139 (internal citation omitted). Even before Thomas, it was well established that placing an inmate in a dry cell for a short period of time in order to maintain institutional security and preserve internal order and discipline does not violate the Eighth Amendment.[5] *Gilblom v. Gillipsie*, 435 F. App'x 165, 168-69 (3d. Cir. 2011); *Daniels v. Pitkins*, 2017 WL 890090, at *5 (M.D. Pa., March 6, 2017)

---

[5] Plaintiff also mentions not being able to wash his hands in passing, although this particular detail has not been borne out by any evidence of record. Regardless, it likely does not state a claim anyway. Denial of soap nor exposure to feces for a limited period of time does not rise to the level of a constitutional violation. *Freeman v. Miller*, 615 F. App'x 72, 77 (3d Cir. 2015) (denial of soap for 7 days); *Schaeffer v. Schamp*, 2008 WL 2553474, at *6 (W.D. Pa. June 25, 2008) (denial of soap for 10 days); *Whitney v. Wetzel*, 649 F. App'x 123, 127-28 (3d Cir. 2016) (exposure to feces).

(Conaboy, J.); *Muchler v. Smith Bail Bonds*, LLC., 2016 WL 3035303, at *6 (M.D. Pa. May 26, 2016) (Nealon, J.).

The Plaintiff was suspected of bringing contraband into SCI-Rockview; a search of his cell confirmed that he was in possession of serious contraband. SMF ¶¶ 3, 4, 7. Plaintiff was checked every two hours by medical as required. SMF ¶ 8. Plaintiff remained in the dry cell until staff could conclude that he was not in possession of contraband. Despite Plaintiff's varied contentions,[6] there is nothing in the record that establishes that the conditions in the dry cell were vile to the point that they run afoul of *Thomas*. The record in this case establishes that Plaintiff's assignment to the dry cell was reasonable, and the timeframe was not excessive. Summary judgment should be granted in favor of Defendants.

### C. Plaintiff has failed to state a retaliation claim.

To establish a claim for retaliation, an inmate must demonstrate: (1) that she engaged in constitutionally protected conduct; (2) that an adverse action was taken against her by a prison official; and (3) that there is a causal connection between the exercise of her constitutional rights and the adverse action. *Mitchell v. Horn*,

---

[6] For example, Plaintiff claims that certain COs, only one of whom is a Defendant, refused him water at various points. This is likely not a constitutional violation anyway as Plaintiff has stated it, given that he offers no timeframe or frequency for this, but it is, for purposes of summary judgment, belied by the aforementioned medical records, which indicate that Plaintiff was offered water every two hours and in fact was frequently already drinking water. *See generally* Medical Records, attached to SMF as Exhibit F.

13

318 F.3d 523, 530 (3d Cir. 2003); *Rauser v. Horn*, 341 F.3d 330 (3d Cir. 2001); *Davis v. Harlow*, 2014 WL 4250382 at *4 (W.D. Pa. 2014); *Laurensau v. Pluck*, 2013 WL 4779010 at *10 (W.D. Pa. 2013). If a plaintiff is able to meet this *prima facie* case, the burden then shifts to the defendants to prove by a preponderance of the evidence that they would have made the same decision absent the protected conduct for reasons reasonably related to penological interest. *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001); *Davis* at *4. Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. *Laurensau* at *11 (citing *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) and *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)).

As is endemic in this case, it is not entirely clear what the retaliation is to which Plaintiff refers. It does not appear to be his placement in the dry cell generally, nor is it a misconduct that he ultimately pled guilty to and did not appeal, as both of those things happened because of the investigation into Plaintiff's possession of contraband. Plaintiff made some references to the fact that some visiting privileges were suspended. Although a complete and total suspension of his visitation privileges could state a constitutional violation,[7] the

---

[7] *See Cordero v. Warren,* 612 Fed.Appx. 650, 654 (3d. Cir. 2015) (establishing that a temporary restriction of visitation privileges with a specific individual did not state a claim).

record does not establish this, nor does it conclusively establish who would even have ordered or accomplished such a thing.  Summary judgment is essentially "put up or shut up" time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.  *See Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).  Plaintiff has established no retaliation.  Summary judgment should be granted in favor of Defendants.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment should be granted.

                                       **Respectfully submitted,**

                                       **MICHELLE A. HENRY**
                                       **Attorney General**

                                       **By:**   *s/ Jonathan M. Blake*
                                                **JONATHAN M. BLAKE**

**Office of Attorney General**              **Senior Deputy Attorney General**
**15th Floor, Strawberry Square**        **Attorney ID 307030**
**Harrisburg, PA 17120**
**Phone: (717) 783-7128**                    **KAREN M. ROMANO**
                                                  **Chief Deputy Attorney General**
[jblake@attorneygeneral.gov](mailto:jblake@attorneygeneral.gov)            **Civil Litigation Section**

**Date:  March 14, 2024**                      **Counsel for Defendants**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SADEEN JONES, | : |
|           Plaintiff | : |
| | :   No. 1:21-CV-1715 |
| v. | : |
| | :   Judge Wilson |
| MARK C. GARMAN, CAPTAIN VANGORDER, LT. VANCE, LT. SHERMAN, LT. STOVER *and* C.O. J. NICHOLAS, | :   Electronically Filed Document |
| | :   *Complaint Filed 10/07/21* |
|           Defendants | : |

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2024, I caused to be served a true and correct copy of the foregoing document titled Brief in Support of Defendants' Motion for Summary Judgment to the following:

**VIA U.S. MAIL**
**Smart Communications/PADOC**
**Sadeen Jones, DW-1963**
**SCI Coal Township**
**PO Box 33028**
**St. Petersburg, FL 33733**
*Pro Se Plaintiff*

                                         *s/ Jonathan M. Blake*
                                         **JONATHAN M. BLAKE**
                                         Senior Deputy Attorney General