IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SADEEN JONES, | : | Civil No. 1:21-CV-01715 |
| Plaintiff, | : | |
| v. | : | |
| MARK C. GARMAN, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

# MEMORANDUM

Before the court is a motion for summary judgment filed by Defendants. (Doc. 45.) For the following reasons, the court will grant the motion for summary judgment in part, and refrain from entering judgment until all issues have been fully adjudicated. Here, Defendants failed to seek summary judgment on the issue of the duration of Plaintiff's stay in the dry cell and whether it runs afoul of the Eighth Amendment. Therefore, this issue, which was raised against all Defendants, will survive summary judgment.

## BACKGROUND AND PROCEDURAL HISTORY

Sadeen Jones ("Plaintiff") initiated this action by filing a complaint, which was received and docketed by the court on October 7, 2021. (Doc. 1.)[1] This complaint is not on the court's civil rights complaint form and is somewhat difficult to discern. The complaint focuses on the events beginning on July 21,

---

[1] The court notes that this complaint is unsigned in violation of Fed. R. Civ. P. 11(a). The court will allow Plaintiff an opportunity to sign the complaint prior to striking it from the docket.

1

2019 during visiting hours when Plaintiff was removed from his visit and transported to a dry cell. (*Id.*) Plaintiff alleges he was in this dry cell for ten days. (*Id.*) He raises due process, cruel and unusual punishment, and retaliation claims. (*Id.*) Plaintiff failed to clearly set forth the defendants in the complaint, but he named the following six individuals in the statement of facts: (1) Mark C. Garman ("Garman"), Acting Superintendent; (2) Captain VanGorder ("VanGorder"); (3) Lt. Vance ("Vance"); (4) Lt. Sherman ("Sherman"); (5) Lt. Stover ("Stover"); and (6) C.O. J. Nicholas ("Nicholas"). (*Id.*)

Following Defendants' motion to partially dismiss the compliant, Magistrate Judge Martin C. Carlson entered a report and recommendation recommending that the court grant the motion in part and dismiss Plaintiff's injunctive relief and the official capacity damages claims. (Doc. 18.) None of the parties raised any objections to the report and recommendation. The court adopted it on June 2, 2022 and dismissed Plaintiff's request for injunctive relief and all damages claims against Defendants in their official capacity. (Doc. 19.)

Following the conclusion of fact discovery, Defendants filed a motion for summary judgment, statement of facts, and brief in support. (Doc. 45, 49, 50.) Plaintiff responded with a brief in opposition. (Doc. 51.) Defendants then filed a reply brief. (Doc. 52.) In the briefing, the parties agree that remaining claims in this case are due process, cruel and unusual punishment, and retaliation against

Defendants. (Docs. 50, 51.) The court will now address the pending motion for summary judgment.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Rockview, located in Centre County, Pennsylvania, which is located within this district. *See* 28 U.S.C. § 118(b).

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

4

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### A. Summary of Undisputed Facts

Defendants provided a statement of facts that Plaintiff did not challenge. (Doc. 49.)  Pursuant to Local Rule 56.1, the unopposed statement of material facts is deemed admitted.

In July of 2019, Plaintiff was incarcerated at SCI-Rockview.  (Doc. 49, ¶ 1; Doc. 49-1, pp. 4–5.)[2]  Following a visit on July 21, 2019, Plaintiff was placed in a dry cell and investigated for the possession of contraband and possession of a dangerous substance under misconduct D370858.  (Doc. 49, ¶¶ 2–3; Doc. 49-2, pp. 8–9; Doc. 49-3.)  Plaintiff received misconduct D110222 for possession of

---

[2] For ease of reference, the court uses the page numbers from the CM/ECF header.

contraband and possession of a dangerous substance based on a cell search on July 22, 2019.  (Doc. 49, ¶ 4; Doc. 49-4.)  Plaintiff pled guilty to misconduct D110222 and did not appeal any misconducts.  (Doc. 49, ¶¶ 5–6; 49-2, pp. 11–12.)  Plaintiff remained in the dry cell based on the belief that he had ingested these substances.  (Doc. 49, ¶ 7; Doc. 49-5, ¶¶ 6–7.)

### B. Defendants' Motion for Summary Judgment Based on a Lack of Personal Involvement Will Be Denied.

Defendants initially argue that based on Plaintiff's deposition, he cannot establish the personal involvement of any Defendants beyond respondent superior: "Any and all claims that boil down to supervisory liability should have judgment entered in favor of Defendants."  (Doc. 50, p. 7.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that, as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."  *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007).

Plaintiff named six individuals in his complaint: (1) Garman; (2) VanGorder; (3) Vance; (4) Sherman; (5) Stover ; and (6) Nicholas.  (Doc. 1.) Plaintiff appears to base the liability of Defendant Garman on his role as the Superintendent at SCI-Rockview.  Specifically, in his deposition Plaintiff stated that he based his claims against Defendant Garman on his response to a request slip and his role as a Superintendent. (Doc. 49-2, pp. 22–26.)  Plaintiff stated "[h]e's the supervisor of all the COs and everything that was happening, he could have stopped it.  He's the superintendent, he could have stopped what was going on while I was in the dry cell and while they did what they did to me, he could have stopped it." (*Id.*, p. 26.)

When asked about Defendant VanGorder and the basis of his liability, Plaintiff stated in his deposition "he's also a ranked officer who could have put an end and could have stopped what was going on with me being in the dry cell and those supposed misconducts that was placed on me . . . ." (*Id.*, p. 27.)

When asked about Defendant Vance during the deposition, Plaintiff based Defendant Vance's liability on the fact that he told Plaintiff he was going to the RHU prior to Plaintiff attending the hearing, and stated:

> he's also a ranking officer who could have put an end to what was going on, because he also came down to the dry cell, during my stay in the dry cell, and told not just me, but several guys that, in order for me to get out, that I would have to defecate more times than what I had already done at that period of time.

7

(*Id.*, p. 28.) Plaintiff then stated that he took a laxative because Defendant Vance said he would have to defecate more to be released from the dry cell. (*Id.*, p. 29.)

Plaintiff stated that he based the liability of Defendant Stover on the fact that he hand-cuffed him to the top of the bedrail when he initially was placed in the dry cell and that Defendant Stover did not correct Sergeant Butler when he handcuffed Plaintiff to the bottom bedrail. (*Id.*, p. 30.) He also states that Defendants Stover and Nicholas were the individuals who initially took him to the body scanner and the dry cell. (*Id.*, p. 31.) Additionally, Plaintiff also alleges that while in the dry cell, Defendant Nicholas would deprive him of water if he used the restroom during his shift. (*Id.*)

In the deposition, Plaintiff premised the liability of Defendant Sherman on the fact that he was present when Plaintiff was seen by Defendant Vance in the security office and "could have stopped it." (*Id.*, pp. 30–31.)

While the court agrees that any claim that is based solely on supervisory liability should have judgment entered in favor of such defendant, the court notes that Defendants failed to identify which claims boiled down to supervisory liability exclusively. Furthermore, as addressed at length below, Defendants failed to address the issue of the duration of Plaintiff's confinement in the dry cell and presented no evidence as to why or who made the decision to retain Plaintiff in the dry cell after the July 24, 2019 body scan. Therefore, the court will deny

8

Defendants' motion regarding the personal involvement of each Defendant in the remaining Eighth Amendment issue involving Plaintiff's prolonged detention in the dry cell.

### C. The Court Will Enter Judgment in Defendants' Favor on the Due Process Claims.

Plaintiff asserts a due process violation regarding the allegedly false misconducts raised against him by citing both the Fifth and Fourteenth Amendments. (Doc. 1, ¶ 44.)

The Fourteenth Amendment provides, in pertinent part, that no State shall "deprive any person of life, liberty, or property, without due process of law[.]"[3] *See* U.S. Const. amend. XIV. The Third Circuit has held that "with respect to the misconduct hearing, due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports. Thus, so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." *Smith v. Mensinger*, 293 F.3d 641, 653–54 (3d Cir. 2022) *citing Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986); *see also Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (per curiam)

---

[3] Since the crux of the complaint took place at a state facility and Defendants are employees of the state, the court will only address the Fourteenth Amendment claim, as the Fifth Amendment is not applicable.

("Due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports."). Moreover, a retaliatory discipline claim fails when there is "some evidence" to support the determination. *See Nifas v. Beard*, 374 F. App'x 241, 244 (3d Cir. 2010) (*citing Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)).

      Here, the documents attached to the complaint belie any allegation that he was not afforded an opportunity to be heard and to defend against the allegedly false misconduct report. The misconduct report Plaintiff attached to his complaint states that the report was given to him on the day after the incident, July 22, 2019. (Doc. 1-1.) Furthermore, it provided Plaintiff with notice that a hearing may be scheduled any time after July 23, 2019. (*Id.*) A hearing took place on July 31, 2019, and Plaintiff pled guilty to all charges. (*Id.*) In his deposition, Plaintiff stated that he pled guilty to the misconduct. (Doc. 49-2, pp. 11–12.) Plaintiff stated that he pled guilty, "because no one beats misconducts, and I didn't want to spend 180 days inside of RHU." (*Id*, p. 18.) He then alleged that Defendant Vance told him he was going to the restricted housing unit ("RHU") before he even had a hearing, "so it didn't matter." (*Id.*, pp. 18–19.) Furthermore, Plaintiff admitted at the deposition, that he did not appeal his misconduct: "I didn't appeal it. Nobody wins misconducts. I didn't appeal it. You don't win misconducts." (Doc. 49-2, p. 25.)

Furthermore, there was evidence to support the misconduct report that Plaintiff was in possession of a dangerous or controlled substance and contraband. Suboxone and tobacco were found in Plaintiff's property when it was searched. (Doc. 49-5, p. 3.)

Here, the evidence, taken in the light most favorable to Plaintiff, establishes that Plaintiff was provided an opportunity to be heard and defend against the allegedly false misconduct report. The fact that he decided against taking advantage of this opportunity because he thought that it did not matter or he would not be successful does not rise to the level of a due process violation. Furthermore, there was evidence to support the allegedly false misconduct. Therefore, the due process challenge will not proceed past summary judgment.

The court acknowledges Plaintiff's argument that Defendants failed to follow Department of Corrections ("DOC") policy. (Docs. 1, 51.) However, DOC policy does not have the force of law and does not rise to the level of a regulation. *Atwell v. Lavan*, 557 F.Supp.2d 532, 556, n. 24 (M.D. Pa. Mar. 26, 2008) *citing Mercy Catholic Medical Center v. Thompson*, 380 F.3d 142, 154 (3d Cir. 2004). Therefore, judgment will be entered in Defendants' favor on the Fourteenth Amendment claim.

### D. Summary Judgment Will Be Entered, In Part, In Favor of Defendants on the Eighth Amendment Claims.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. Amend. VIII. Prison conditions constitute cruel and unusual punishment if they result in a serious deprivation of the prisoner's basic human needs. *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). Only conditions that are so reprehensible as to be deemed inhumane under contemporary standards or deprive an inmate of minimal civilized measures of the necessities of life violate the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "A claim of inhumane prison conditions may rise to the level of an Eighth Amendment violation where the prison official 'deprived the prisoner of the minimal civilized measure of life's necessities' and 'acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health.'" *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (quoting *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016)).

Such a claim contains two requirements: an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner asserting a claim that the conditions of confinement violate the Eighth Amendment must allege: (1) that objectively, they were "incarcerated under conditions posing a substantial risk of serious harm;" and (2) that the defendant prison official

12

personally knew of the substantial risk to the inmate's health or safety and failed to "respond [ ] reasonably to the risk." *Farmer*, 511 U.S. at 834, 844–45.

In the complaint, Plaintiff alleges that he was given a mattress, but because of the way he was handcuffed, he had to sleep on the floor while held in the dry cell for ten days. (Doc. 1, ¶ 34.) He alleges that he was "substantially deprived of drinking water when placed in the dry cell." (*Id.*, ¶ 35.) He also alleges that he was "compelled to def[e]cate for a total of 27 times all the while with his left wrist handcuffed to a bed rail for 10 days – 24 hours a day." (*Id.*, ¶ 36.) Therefore, Plaintiff clearly challenges the conditions of his confinement in the dry cell. Additionally, Plaintiff challenges the duration of his time in the dry cell following the second body scan on July 24, 2019: "thereafter Plaintiff should've been released from the dry cell, instead Plaintiff was again returned cruel[l]y to the dry cell for an additional six (6) more days." (Doc. 1, ¶ 24.)

When considering whether conditions of confinement violated the Eighth Amendment, "the Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349, (1981). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347. The Third Circuit has clearly found that "administrative confinement in a dry cell is unpleasant and often

13

unsanitary, [but] so long as the conditions of that confinement are not foul or inhuman, and are supported by some penological justification, they will not violate the Eighth Amendment." *Thomas v. Tice*, 948 F.3d 133, 140 (3d Cir. 2020).

Defendants have presented evidence regarding the conditions of Plaintiff's stay in the dry cell including his deposition, in which he states that Defendant Nicholas would deprive inmates of water if they used the bathroom during his shift. (Doc. 49-2, p. 31.) Defendants submitted medical evidence demonstrating that while in the dry cell, Plaintiff was monitored by medical every two hours, and he was consistently offered water for hydration. (Doc. 49-6.) The medical notes demonstrate that Plaintiff was either witnessed drinking water or Plaintiff was offered and refused water. (*Id*.) They also demonstrate that Plaintiff was consistently viewed on his bunk and that he refused to have the wrist restraints or "cuffs" moved from his left arm to his right. (*Id*.) He was also provided an opportunity to exercise, but he consistently refused. (*Id*.) Therefore, the court finds that Defendants have presented evidence that the conditions of confinement in the dry cell do not rise to the level of an Eighth Amendment violation. The evidence demonstrates that Plaintiff refused offers of water, exercise, and relief from the restraint on the left arm and that the extreme conditions he raised in the complaint were not forced upon him, but were a product of his own choice. Plaintiff has presented no evidence to refute this evidence. Therefore, the court

will grant judgment in favor of Defendants on the issue of conditions of confinement for his stay in the dry cell.

However, Defendants failed to address the issue of the duration of confinement in the dry cell as part of their motion for summary judgment. (Doc. 50.) In *Thomas*, the Third Circuit stated the following concerning a prolonged detention in a dry cell:

> Our precedent is clear that, without some penological justification, an inmate may not be administratively confined in a dry cell. *See Young*, 960 F.2d 351, 364–65; *cf. United States v. Holloway*, 128 F.3d 1254, 1256 (8th Cir. 1997) (dry cell justified when prison officials had reason to believe inmate was smuggling contraband into jail). *See also Rhodes*, 452 U.S. at 347, 101 S.Ct. 2392 (conditions of confinement may not be "grossly disproportionate" or "result in pain without any penological purpose"); *Gregg v. Georgia*, 428 U.S. 153, 183, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) ("[T]he sanction imposed cannot be so totally without penological justification that it results in the gratuitous infliction of suffering.").
>
> While the penological purpose must always be legitimate, *Ricks v. Shover*, 891 F.3d 468, 475, 476 (3d Cir. 2018), we have never determined the exact quantum or nature of penological interest that is needed to justify confinement in a dry cell. But we are satisfied that there must be at least *some* interest. Here, the PRC failed to present evidence of *any* continuing penological interest after its initial interview with Thomas.

*Thomas*, 948 F.3d at 141.

Therefore, the court is left to discern the penological interest to justify confinement in the dry cell. Defendants have submitted the affidavit of Defendant VanGorder, which states that a confidential informant informed him that Plaintiff

15

would be receiving "another one hundred (100) strips of suboxone at his next visit on 7/24/2019." (Doc. 49-5, p. 3.) Based on this evidence, Defendant VanGorder directed officers to place Plaintiff in a dry cell, pending investigation. (*Id*.) When Plaintiff's property was searched on July 21, 2019, eighteen strips of suboxone and two bags of pipe tobacco were found. (*Id*.) Defendant VanGorder states "I believed it was highly probable that Jones could have ingested additional suboxone." (*Id*.) Plaintiff was held in the dry cell from July 21, 2019 through August 1, 2019. (*Id*.)

    Here, Defendants have established an initial penological justification for holding Plaintiff in a dry cell per Defendant VanGorder's affidavit stating he "believed it was highly probably that Jones could have ingested additional suboxone." (Doc. 49-5.) However, Plaintiff included allegations in the complaint that the body scans performed on both July 21, 2019 and July 24, 2019 showed no evidence of any contraband. (Doc. 1, ¶¶ 21, 24.) Despite these negative body scans, Plaintiff continued to be held in a dry cell through August 1, 2019. Defendants have presented no evidence of a continued penological reason for the detention in the dry cell following the July 24, 2019 body scan. In fact, Defendants' evidence is devoid of any reference to the two body scans and their findings. Therefore, the court finds in accord with the Third Circuit precedence in *Thomas* that there is an issue of material fact regarding any continuing penological

interest to justify Plaintiff's continued detention in the dry cell after the July 24, 2019 body scan. Therefore, this issue will continue past summary judgment.

### E. Summary Judgement Will Be Entered In Favor of Defendants on the First Amendment Claims.

Plaintiff alleges he was retaliated against for filing grievances. (Doc. 1, ¶¶ 57–61.) It is well-settled that prison officials may not retaliate against an inmate because he exercises his right of access to the courts. *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015). A prisoner asserting a retaliation claim must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). The filing of a lawsuit or a prison grievance constitutes protected activity under the First Amendment. *Fantone*, 780 F.3d at 191.

Here, the record submitted by Defendants clearly establishes that grievances were not filed prior to his prolonged stay in the dry cell or prior to the misconducts. (Doc. 49-7.) Both his confinement in the dry cell and the misconduct were concluded prior to Plaintiff's submission of his grievance on August 2, 2019. (*Id.*) Plaintiff was released from the dry cell on August 1, 2019, and his misconduct hearing was July 31, 2019. (Doc. 49-4.) Therefore, it is unclear what

constitutionally protected activity Plaintiff was conducting that resulted in the alleged retaliatory activity of placement in the dry cell and the allegedly false misconduct. Based on the undisputed evidence submitted by Defendants, summary judgment will be granted in Defendants' favor in regards to the First Amendment retaliation claim.

## CONCLUSION

For the afore mentioned reasons, the court will grant Defendants' motion in part, and grant summary judgment in favor of Defendants on the Fourteenth Amendment due process claim, the Eighth Amendment conditions of confinement claim, and the First Amendment retaliation claim. However, Defendants failed to present evidence concerning the duration of Plaintiff's detention in the dry cell and the Eighth Amendment claim associated with the detention continuing past the July 24, 2019 body scan. Since this was not properly addressed in briefing, the court will allow this claim to proceed against all named Defendants.

An appropriate order follows.

                                        s/Jennifer P. Wilson
                                        JENNIFER P. WILSON
                                        United States District Judge
                                        Middle District of Pennsylvania

Dated: September 26, 2024